```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X
                                     |
YOUNG SOOK KIM a/k/a YOUNG SOOK      |
CHUN and KYOUNG WOUN CHUN,           |
                                     |
             Plaintiffs,             |
                                     |     04 Civ. 3755 (KMW)
     -against-                       |
                                     |     OPINION AND ORDER
DAVID GOLDSTEIN,                     |
                                     |
             Defendant.              |
                                     |
-------------------------------------X
```
KIMBA M. WOOD, U.S.D.J.:

This case involves allegations of legal malpractice following a dog bite. Plaintiff Young Sook Kim, also known as Young Sook Chun ("Kim"), was severely injured when she was bitten by a dog on January 1, 1999. Kim retained Defendant David Goldstein to file a personal injury action on her behalf. No action was ever filed, and the statute of limitations elapsed. Kim and her husband, Kyoung Woun Chun ("Chun"), then brought suit against Goldstein in this Court. Goldstein moves for summary judgment on the sole remaining count of the Complaint,[1] which alleges that Goldstein engaged in legal malpractice. For the reasons stated below, summary judgment is granted.

---

[1] By Order dated February 17, 2005, the Court dismissed Counts Two (negligent hiring and supervision), Three (misrepresentation of malpractice), and Four (loss of consortium). The Order also held that Kim could not recover damages for mental anguish and emotional distress arising from any malpractice.

1

**BACKGROUND**

On January 1, 1999, Kim visited Young Ja Kim Lee ("Lee") at Lee's house in South Salem, New York. (Flanagan Aff., Ex. D (Kim Dep.), at 11-12; Def.'s Rule 56.1 Statement ¶ 5.) Lee owned a one-year-old Jindo dog named Jin. (Flanagan Aff., Ex. E (Lee Dep.), at 9-10.) Kim alleges that she was afraid of the dog, because it was large and because it sat in front of a window barking and "moaning." (Kim Dep. at 19-20.) Kim says she told Lee she was afraid and asked her to tie up the dog, but Lee refused. (Id. at 21-22.) Some minutes later, the dog approached Kim, who was seated on a sofa, and then, without warning, bit her on the face and arm. (Id. at 26-27.)

Kim retained Goldstein to bring a personal injury action against Lee. (Def.'s Rule 56.1 Statement ¶ 1.) No action was ever filed. (Kim Dep. at 61.)

In this legal malpractice action, Defendant served a Request to Admit on Plaintiffs dated September 13, 2005, which asked Plaintiffs to admit that prior to January 1, 1999, Jin had not bitten anyone or acted aggressively toward anyone; was not restrained in the presence of visitors; had not attacked other dogs; and did not display any vicious propensities. (Flanagan Aff., Ex. G (Request to Admit), ¶¶ 4, 6, 8-9, 13.) Plaintiffs never answered or objected to the Request to Admit.

**LEGAL STANDARD**

Summary judgment should be awarded if there is no genuine issue as to any material fact and Defendant is entitled to a judgment as a matter of law. Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007). A genuine issue exists if a reasonable jury could return a verdict in Plaintiffs' favor. Id. The evidence must be viewed in the light most favorable to Plaintiffs, and all inferences must be drawn in their favor. Id.

**DISCUSSION**

**I.   Plaintiffs Have Admitted the Facts Stated in the Request to Admit**

Because Plaintiffs did not respond to Defendant's Request to Admit, dated September 13, 2005, Plaintiffs have admitted the facts stated in the Request.

Federal Rule of Civil Procedure 36 permits a party to serve on another party a written request to admit any relevant fact. Fed. R. Civ. P. 36(a). The fact is deemed admitted unless, within thirty days of service of the request, the party to whom the request is directed serves a written answer or objection. Id. Any matter thus admitted is conclusively established, unless the court on motion permits withdrawal or amendment of the admission. Id. 36(b). Plaintiffs never answered or objected to Defendant's Request to Admit, and they never moved to withdraw or amend their admission.

Plaintiffs' attorney gave two reasons for the failure to respond: (1) a malfunctioning e-mail system and (2) a paralegal's mistaken belief that the response to Defendant's Local Rule 56.1 Statement was the response to the Request to Admit.  (Park Aff. ¶¶ 49-50.)  Neither explanation is persuasive.  The condition of counsel's e-mail system is not relevant, because the Request to Admit was served by overnight mail.  (See Flanagan Reply Aff. ¶ 4.)  Regardless of any confusion on the part of Plaintiffs' counsel's staff, Defendant's counsel directly reminded Plaintiffs' counsel about the Request to Admit by letter, and also did so in passing during a telephone conference with the chambers of Magistrate Judge Maas.[2]  (See id., Ex. A; id., Ex. B, at 4.)

Because Plaintiffs neither answered the Request to Admit nor moved to withdraw or amend their admissions, the Court may treat the facts in the Request to Admit as conclusively established and, if the facts are dispositive, enter summary judgment. Moosman v. Joseph P. Blitz, Inc., 358 F.2d 686, 688 (2d Cir. 1966); see also Donovan v. Carls Drug Co., 703 F.2d 650, 651-52 (2d Cir. 1983), rejected on other grounds by McLaughlin v. Richland Shoe Co., 486 U.S. 128, 134 (1988).  Although the

---

[2] In addition, Plaintiffs' counsel does not explain how a paralegal could have confused the Request to Admit with the Local Rule 56.1 Statement, given that the answer to the Request to Admit was due October 13, 2005, but Defendant's initial Local Rule 56.1 Statement was not filed until November 15, 2005.

4

failure to respond "can effectively deprive a party of the opportunity to contest the merits of a case," this result "is necessary to insure the orderly disposition of cases; parties to a lawsuit must comply with the rules of procedure." United States v. Kasuboski, 834 F.2d 1345, 1350 (7th Cir. 1987). Furthermore, any potential harshness is tempered by the availability of a motion to withdraw admissions, a procedure that Plaintiffs did not employ. Id.; see also O'Bryant v. Allstate Ins. Co., 107 F.R.D. 45, 48 (D. Conn. 1985) (noting mitigating effect of party's failure to utilize Rule 36 procedure to rectify unintended admissions).

To the extent that Plaintiffs' admissions conflict with deposition testimony, the former are controlling. Rule 36 provides that any matter admitted pursuant to a request to admit is "conclusively established." Fed. R. Civ. P. 36(b). The advisory committee's note emphasizes that admissions have a "conclusively binding" effect, akin to a stipulation, so that parties may safely avoid the expense of preparing to prove matters already admitted. Id. advisory committee's note; see also Kasuboski, 834 F.2d at 1350. Plaintiffs therefore may not use deposition testimony to create a genuine issue of material fact as to any fact admitted pursuant to Rule 36.

**II.   Defendant Is Entitled to Summary Judgment**

To prevail on their claim of legal malpractice under New York law, Plaintiffs must prove that (1) Defendant was negligent, (2) the negligence proximately caused Plaintiffs' loss, and (3) Plaintiffs incurred actual damages.  Prudential Ins. Co. of Am. v. Dewey Ballantine, Bushby, Palmer & Wood, 573 N.Y.S.2d 981, 985 (App. Div. 1991).  The second element requires Plaintiffs to show that but for Defendant's negligence, Plaintiffs would have prevailed in the underlying action.  Pistilli v. Gandin, 780 N.Y.S.2d 293, 293 (App. Div. 2004).

Plaintiffs have presented two theories they would have advanced in the underlying personal injury action, strict liability and negligence.  Summary judgment is warranted because Plaintiffs have offered no evidence that would have allowed them to prevail on either theory.

**A.   Strict Liability**

New York law holds the owner of a domestic animal strictly liable for injuries caused by the animal if the owner knew or should have known of the animal's "vicious propensities." Collier v. Zambito, 807 N.E.2d 254, 257 (N.Y. 2004).  An animal has vicious propensities if it is disposed to endanger the safety of people or property.  Id. at 256 (citing Dickson v. McCoy, 39 N.Y. 400, 403 (1868)).  Knowledge of a dog's vicious propensities

can be established by proof that the owner knew the dog had bitten someone in the past or that the dog had been known to growl, snap, or bare its teeth.  Id.  By contrast, barking and running around are not evidence of vicious propensities, because these activities "are consistent with normal canine behavior.  Barking and running around are what dogs do."  Id.

Plaintiffs have presented no evidence that would have allowed them to prevail on a strict liability theory in the underlying action but for Defendant's negligence.  Plaintiffs admitted that, prior to January 1, 1999, Jin had never bitten anyone or acted aggressively toward anyone, and that Lee considered Jin to be friendly.[3]  (Request to Admit ¶¶ 4, 6, 16.)  Plaintiffs' evidence of Jin's conduct on January 1 itself would also have been insufficient to permit a reasonable jury to decide in their favor.  Kim stated that Jin did not growl or snap at her before the attack (Kim Dep. at 37-38), and although she testified that Jin barked out the window, barking is not a sign of vicious propensities.  Collier, 807 N.E.2d at 256.  Kim's own subjective fear of the dog, unsupported by any objective facts but these, has no bearing on Jin's propensities or on Lee's knowledge of them.

---

[3] As explained above, because of these admissions, the Court may not take account of Kim's allegation in her deposition that Lee's daughter told Kim that Lee knew of a prior incident involving Jin and a child.  (Pls.' Rule 56.1 Response ¶ 6.)

**B.     Negligence**

Although Plaintiffs could have resorted to a negligence theory in the underlying action,[4] they have provided no evidence that would have allowed them to prevail on that theory.  Under negligence law, Plaintiffs would have been required to prove that Jin's conduct, although not vicious, resulted in a reasonably foreseeable injury.  See Colarusso v. Dunne, 732 N.Y.S.2d 424, 426 (App. Div. 2001).  As explained above, New York courts regard barking as normal canine behavior, Collier, 807 N.E.2d at 256, and barking therefore is not evidence that an attack was reasonably foreseeable.  Plaintiffs have not produced any other evidence suggesting that Lee could have reasonably foreseen Jin's attack on Kim, such as notice of similar prior incidents.  See Goldberg v. LoRusso, 733 N.Y.S.2d 117, 118 (App. Div. 2001) (stating that dog owner is generally not subject to negligence liability for failing to restrain dog unless owner had prior notice of particular behavior); Althoff v. Lefebvre, 658 N.Y.S.2d 695, 696 (App. Div. 1997) (holding that defendant's lack of

---

[4] Prior to 2006, courts in the Second Department (which includes Westchester County, the site of the incident) allowed plaintiffs injured by domestic animals to bring common-law negligence claims. E.g., Colarusso v. Dunne, 732 N.Y.S.2d 424, 426 (App. Div. 2001); St. Germain v. Dutchess County Agric. Soc'y, 712 N.Y.S.2d 146, 149 (App. Div. 2000).  Although the Court of Appeals concluded in 2006 that owners of domestic animals are not liable for injuries caused by their animals that resulted from negligence, see Bard v. Jahnke, 848 N.E.2d 463, 468 (N.Y. 2006), the Court should analyze the theories Plaintiffs would have presented in the underlying action according to the law in effect when the statute of limitations ran on Plaintiffs' personal injury claims, N.Y. C.P.L.R. § 214 (McKinney 2007).

knowledge of dog's propensity to jump on people defeats negligence claim for injury caused by jumping dog).

**CONCLUSION**

For the reasons stated above, Defendant's motion for summary judgment (docket number 30) is GRANTED. The Clerk of Court is directed to close this case; any pending motions are moot.

SO ORDERED.
Dated: New York, New York
May **31**, 2007

_____
Kimba M. Wood
United States District Judge

9